Filed 10/6/20  P. v. Quintos CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEO JAVIER QUINTOS,<br><br>    Defendant and Appellant. | H047591<br>(Monterey County<br>Super. Ct. No. SS022073B) |

Leo Javier Quintos appeals the trial court's summary denial of his petition to vacate his 2002 murder conviction and resentence him pursuant to Penal Code section 1170.95.  He contends, and the Attorney General concurs, that the trial court failed to follow the procedural requirements of the statute.  We agree, reverse the trial court's order, and remand the matter with directions to issue an order to show cause under Penal Code section 1170.95, subdivision (c) and hold a hearing pursuant to section 1170.95, subdivision (d).

## I.  FACTS AND PROCEDURAL BACKGROUND

We take the facts underlying Quintos's crimes from this court's opinion in his direct appeal of the conviction.  (*People v. Quintos* (Mar. 1, 2004, H025916) [nonpub. opn.] (*Quintos I*).)

"At 11:48 p.m. on August 1, 2002, police officers were dispatched to a possible shooting near the Aquarium in Monterey. Ignacio Sanchez had been shot and was lying in the street near his car. Sanchez's companion gave a description of the suspects to the police. Sanchez was transported to the hospital where he died.

"Sanchez's companion told police that she and Sanchez had been sitting in their car when a bronze 1990 Honda Civic pulled up behind them. Two Hispanic males, later identified as Anthony Estrada and [Quintos], exited the car. Estrada pointed a gun, and said, '[G]et out, give up your shit.' After both Estrada and [Quintos] punched and kicked Sanchez, Estrada shot him. Sanchez's companion was also punched in the face. Estrada and [Quintos] then fled. The driver of the Honda was later identified as Veronica Galvan.

"Fingerprints were taken from Sanchez's car. They matched those of Estrada and [Quintos]. Both Estrada and [Quintos] were on parole from the California Youth Authority. Estrada and [Quintos] were arrested and their residences were searched. Estrada admitted that they had intended to steal Sanchez's car and that he shot him. Galvan admitted that she had driven the car on the night of the shooting." (*Quintos I* at p. 2.)

On November 19, 2002, Quintos was charged in a second amended complaint with murder (Pen. Code, § 187; count 1),[1] two counts of attempted carjacking (§§ 215, subd. (a), 664; counts 2 & 3), and two counts of attempted second degree robbery (§§ 211, 664; counts 4 & 5). The complaint alleged in each count a gang allegation against Quintos (§ 186.22, subd. (b)(1)). The complaint also charged Estrada and Galvan with a number of crimes.

On December 23, 2002, Quintos entered a no contest plea plea to one count of first degree murder (§ 187; count 1) and waived his right to trial by jury. The plea agreement

---

[1] Unspecified statutory references are to the Penal Code.

did not set out a factual basis for the plea and did not specify the theory of liability for Quintos's murder conviction. The minute order for the change-of-plea hearing stated that the trial court found there was a factual basis for the plea, but it set out no facts and did not specifically reference any evidence. Prior to sentencing, the trial court conducted a bench trial and found true the gang enhancement. On April 24, 2003, the trial court sentenced Quintos on count 1 to a term of life imprisonment with a minimum of 25 years and on the gang enhancement to a term of 10 years, to be served consecutively to the term on count 1, for an aggregate sentence of 35 years to life with the possibility of parole. The trial court dismissed the remaining counts.

Quintos appealed both the trial court's true finding on the gang enhancement and the 10-year consecutive sentence imposed on it. (*Quintos I* at pp. 7, 11.) This court decided that substantial evidence supported the trial court's true finding on the gang enhancement but agreed with Quintos that, because the trial court had imposed a life sentence on count 1, it could not impose a ten-year sentence on the enhancement. (*Id*. at p. 10.) This court ordered the 10-year gang enhancement stricken and a 15-year minimum parole eligibility imposed. (*Id.* at pp. 12–13.) On March 1, 2004, the trial court resentenced Quintos on count 1 to a term of 25 years to life imprisonment with the possibility of parole.

On April 2, 2019, Quintos acting in propria persona, filed a petition for resentencing pursuant to section 1170.95 (petition) and attached this court's opinion on his direct appeal. Quintos stated he "was charged not as the actual perpetrator of the shooting but rather as an aider and abettor to first degree felony murder along with co-defendant Anthony Estrada, who admitted to shooting the victim [] during an attempted carjacking." Quintos asserted he was charged by a complaint that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, he was convicted of first degree murder by plea in lieu of a trial at which he could have been convicted of first degree murder, and he could not

3

be convicted of first or second degree murder under current law. Quintos contended he was not the actual killer, did not aid and abet first degree murder with the intent to kill and was not a major participant who acted with reckless indifference to human life. He argued he was entitled to relief under section 1170.95 and requested resentencing. The trial court appointed counsel to represent Quintos.

The district attorney opposed the petition. The district attorney acknowledged that the information against Quintos allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. The district attorney also stated there was "no dispute" that Quintos was not the actual killer and asserted "[t]he most logical theory of liability for [Quintos], on a murder charge, is felony murder." Nevertheless, the district attorney argued that Quintos had failed to make a prima facie case under section 1170.95 because he was a major participant in the carjacking who acted with reckless indifference to human life.[2]

In support of the opposition to Quintos's petition, the district attorney attached the first amended complaint; Quintos's plea agreement; this court's opinion in *Quintos I*; the abstract of judgment; and Quintos's probation report.

Quintos filed a response to the district attorney's opposition to his section 1170.95 petition. Quintos argued that he had made a prima facie case for relief and requested the trial court to issue an order to show cause and conduct a hearing. Quintos argued the "issue" at that hearing would be whether he acted with reckless indifference to human life.

On November 20, 2019, the trial court summarily denied Quintos's petition, ruling that he had failed to make a prima facie showing for relief under section 1170.95. The

---

[2] In addition, the district attorney argued that Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437)—which added section 1170.95 and amended sections 188 and 189 (Stats. 2018, ch. 1015)—is unconstitutional. The trial court did not reach this argument, and that issue is not before us on appeal.

trial court described the question for the court as the application of the recent amendment to the felony murder rule and "whether or not the defendant acted with reckless indifference or disregard for human life in his participation in these events that led to the murder of the victim." The trial court provided a summary of the facts in light of the legal standards set out in *Tison v. Arizona* (1987) 481 U.S. 137 and *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*). The trial court found that Quintos planned and participated in the robbery, was aware of the dangers of carjacking, and through his actions was "facilitating the crime and facilitating the death." The court stated "Based on the facts of this case and the law that is currently in effect on felony murder, the Court respectfully declines to find that the petition[er] has made a prima facie showing that he's entitled to re-sentencing."

Quintos timely appealed the trial court's denial of his petition.

On appeal, Quintos argues the trial court violated the procedural requirements of section 1170.95 when it summarily denied his petition. Quintos also contends the trial court violated his due process rights by relying on facts drawn from his probation report and from this court's opinion from his direct appeal. The Attorney General has conceded that the trial court erred in summarily denying Quintos's petition. For the reasons set forth below, we agree.

## II. DISCUSSION

A. *Applicable Law*

" 'Senate Bill 1437, which took effect on January 1, 2019, "addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine[.]" [Citation.] Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. [Citations.] "This was true irrespective of whether the defendant harbored malice aforethought. " ' " (*People v. Soto*

5

(2020) 51 Cal.App.5th 1043, 1052 (*Soto*), review granted on other grounds Sept. 23, 2020, S263939.)

" 'Senate Bill 1437 "redefined 'malice' in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer 'be imputed to a person based solely on [his or her] participation in a crime.' [Citation.]" [Citation.] Senate Bill 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e). Under that subdivision, a participant in enumerated crimes is liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life. [Citations.] Senate Bill 1437 thus ensures that murder liability is not imposed on a person who did not act with implied or express malice, was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Soto*, *supra*, 51 Cal.App.5th at p. 1053.)

Senate Bill 1437 also added section 1170.95, which states that " '[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when [specified] conditions apply.' " (*Soto*, *supra*, 51 Cal.App.5th at p. 1053; § 1170.95, subds. (a) & (d)(3).)

Section 1170.95, subdivision (c) "provides '[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to

6

show cause.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973–974 (*Drayton*).) Section 1170.95, subdivision (d) "describes the timing and standard of proof for the hearing the trial court must conduct if it issues an order to show cause and the parties have not stipulated to resentencing." (*Drayton*, at p. 974.)  At this hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

B. *Analysis*

Quintos's appeal involves a question of law—that is, whether the trial court had the authority to engage in independent factfinding when summarily denying his petition under section 1170.95, subdivision (c).  That question is one of statutory interpretation, which we review de novo.  (*People v. Cooper* (2020) 54 Cal.App.5th 106, 115.)

As this court has previously described, "when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.]  The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)  A trial court may not evaluate and weigh the evidence under section 1170.95, subdivision (c).  (See *id.* at p. 982.)

7

Quintos's petition asserted that he was charged in a complaint that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, he was convicted of first degree murder by plea in lieu of a trial at which he could have been convicted of first degree murder, and he could not be convicted of first or second degree murder under current law. Quintos asserted that he was not the actual killer, did not aid and abet first degree murder with the intent to kill, and was not a major participant who acted with reckless indifference to human life. These assertions were sufficient to trigger the issuance of an order to show cause by the trial court unless readily ascertainable facts from the record established they were untrue as a matter of law. (§ 1170.95, subds. (a) & (c); *Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

Nothing in the record from Quintos's conviction established, as a matter of law and without additional factfinding, that Quintos was a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e).) In addition, Quintos committed his crimes under circumstances that, at least in theory, could trigger the application of the natural and probable consequences doctrine. (See *Soto*, *supra*, 51 Cal.App.5th at p. 1058 ["The natural and probable consequence doctrine . . . is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime."].) Under the prosecution's own theory of the case, Quintos played a more limited role in the victim's death than did Estrada. The information and the underlying facts permit an inference that Quintos could have been aiding and abetting Estrada in several crimes—the natural and probable consequences of which were murder. Nothing in the record of his conviction refutes this possibility as a matter of law.

Instead of pointing to anything in Quintos's record of conviction that established the theory of murder upon which he was convicted, or that established as a matter of law that Quintos was a major participant in the felony who acted with reckless indifference to

human life, the district attorney instead argued that Quintos could now be convicted of murder based on facts drawn from the probation report. The district attorney by implication argued that the trial court could engage in this factfinding when assessing whether Quintos had made a prima facie case for relief under section 1170.95, subdivision (c). In its ruling, the trial court appears to have agreed with this reading of the statute. In denying Quintos's petition, the trial court engaged in factfinding based upon its independent review of materials in the record. In particular, the trial court implicitly found that the facts established that Quintos was a major participant who acted with reckless indifference to human life.

As this court has explained, however, the trial court did not have this authority. "At this stage of the petition review process, governed by section 1170.95(c), the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d). Further, the *Banks* test, which governs the inquiry whether the defendant was a major participant in a felony necessarily requires the weighing of facts and drawing inferences. (*Banks*, *supra*, 61 Cal.4th at p. 803.) The question whether [Quintos] acted with reckless indifference is a similarly multifaceted inquiry. (See *People v. Clark* (2016) 63 Cal.4th 522, 622.) In making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true." (*Drayton*, *supra*, 47 Cal.App.5th at p. 982, fns. omitted.)

In light of the record here, the trial court erred in not issuing an order to show cause and conducting a hearing pursuant to section 1170.95, subdivision (d) at which the prosecution will bear the burden of proving, beyond a reasonable doubt, that Quintos is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

For these reasons, we reverse the trial court's order denying the petition and remand with directions to issue an order to show cause under section 1170.95,

subdivision (c) and hold a hearing pursuant to section 1170.95, subdivision (d).  We express no opinion about Quintos's ultimate entitlement to relief following the hearing.  (§ 1170.95, subd. (d)(2).)  In light of this conclusion, we need not address Quintos's contentions that the trial court erred in relying on certain evidence drawn from the record when it summarily denied the petition.

## III.  DISPOSITION

The order denying Quintos's petition to vacate his murder conviction and for resentencing is reversed.  The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing to determine whether to vacate Quintos's murder conviction and recall his sentence and resentence him.  (Pen. Code, § 1170.95, subd. (d)).

_____
                                                Danner, J.

WE CONCUR:



_____
Greenwood, P.J.




_____
Grover, J.




**H047591**
*People v. Quintos*